IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN CHASE COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2019-SB62**, acting by and through its special servicer, KeyBank National Association,<br><br>      One Federal Street, 3rd Floor<br>      Mail Code EX-MA-FED<br>      Boston, Massachusetts 02110<br><br>      Plaintiff,<br><br>v.<br><br>**700 & 704 51ST ST NE LLC,**<br><br>Serve:  Sam Razjooyan, Resident Agent<br>          2417 Evarts St NE<br>          Washington, D.C. 20018<br><br>and<br><br>**ALI RAZJOOYAN,**<br><br>      115 Bytham Ridge Lane<br>      Potomac, Maryland 20854<br><br>      Defendants. | Case No. _____ |

## **COMPLAINT**

Plaintiff U.S. Bank National Association, as Trustee for the Registered Holders of J.P. Morgan Chase Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2019-SB62, acting by and through its special servicer, KeyBank National Association (collectively the "Lender"), complains against defendants, 700 & 704 51st St NE LLC ("Borrower") and Ali Razjooyan ("Guarantor") and states as follows.

## PARTIES, JURISDICTION, AND VENUE

1. Lender is a national banking association whose main office is located in Ohio.

2. Borrower is a limited liability company whose members, upon information and belief, are citizens of the District of Columbia.

3. Guarantor is an individual who, upon information and belief, is a citizen of Maryland.

4. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.

5. Lender and defendants are citizens of different states because Lender is a citizen of Ohio; because Borrower, upon information and belief, is a citizen of the District of Columbia; and because Guarantor, upon information and belief, is a citizen of Maryland.

6. The amount in controversy exceeds $75,000 because the principal amount of the loan that is the subject of this case is $4,546,000.00 and because the assessed value of the real property securing the loan is $1,455,220.00.

7. The Court has personal jurisdiction over Borrower because it is organized under the laws of the District of Columbia, has its principal place of business in the District of Columbia, and owns the subject real property located in the District of Columbia.

8. The Court has personal jurisdiction over Guarantor because he executed a guaranty securing a loan to an entity organized under the laws of the District of Columbia that has its principal place of business in the District of Columbia and because the real property that secures the loan is located in the District of Columbia.

9. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Lender's claims occurred in the District of Columbia and because the subject real property is located in the District of Columbia.

10. In addition, both Borrower and Guarantor consented to jurisdiction and venue in this Court pursuant to the Loan Documents (defined below).

## FACTUAL ALLEGATIONS

### The Loan Documents

11. Borrower is the owner of certain real property located at 700 & 704 51st Street, Northeast, Washington, DC 20019 improved by two apartment buildings (the "Property").

12. On or about January 31, 2019, Orix Real Estate Capital, LLC ("Orix") made a commercial loan to Borrower for the principal amount of $4,546,000.00 (the "Loan").

13. The Loan is governed by, among other things, a Loan Agreement dated January 31, 2019 (the "Loan Agreement").

14. A copy of the Loan Agreement is attached hereto as Exhibit 1.

15. The Loan is evidenced by, among other things, a Note dated January 31, 2019, in the original principal amount of $4,546,000.00, executed and delivered by Borrower (the "Note").

16. A copy of the Note is attached hereto as Exhibit 2.

17. To secure Borrower's performance of its obligations under the Loan Agreement and Note, Borrower executed a Multifamily Deed of Trust, Assignment of Rents and Security Agreement dated January 31, 2019 and encumbering the Property (the "Deed of Trust").

18. The Deed of Trust was recorded with the Recorder of Deeds of Washington, D.C. on February 4, 2019 as Document Number 2019011849.

19. The Deed of Trust was re-recorded with the Recorder of Deeds of Washington, D.C. on March 26, 2019 at Document Number 2019030629.

20. A copy of the re-recorded Deed of Trust is attached hereto as Exhibit 3.

21. The Deed of Trust grants Lender a security interest in the Property, in all rents arising from the Property (the "Rents"), in all leases of the Property (the "Leases"), and in any part of the Property which may be subject to a security interest under the Uniform Commercial Code.

22. To further secure Borrower's performance of its obligations under the Loan Agreement, Note, and Deed of Trust, Guarantor executed a Guaranty dated January 31, 2019 (the "Guaranty").

23. A copy of the Guaranty is attached hereto as Exhibit 4.

24. The Loan Agreement, Note, Deed of Trust, Guaranty, and all other documents executed in connection with the Loan are referred to collectively herein as the "Loan Documents."

## Assignment of the Loan Documents to Lender

25. In an endorsement to the Note dated January 31, 2019, Orix assigned the Note to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). Note at S-2.

26. In an Omnibus Assignment dated as of January 31, 2019, Orix assigned the Loan Agreement and Guaranty to Freddie Mac.

27. A copy of the Omnibus Assignment is attached hereto as Exhibit 5.

28. In an Assignment of Security Instrument dated as of January 28, 2019, to be effective as of January 31, 2019, and recorded on February 4, 2019 as Document Number 2019011850, Orix assigned the Deed of Trust to Freddie Mac.

29. A copy of the Assignment of Security Instrument is attached hereto as Exhibit 6.

30. In an Assignment of Multifamily Deed of Trust, Assignment of Rents and Security Agreement dated as of May 8, 2019, to be effective as of May 24, 2019, and recorded on May 28, 2019 as Document Number 2019055290, Freddie Mac assigned the Loan Documents to Lender.

31. A copy of the Assignment of Multifamily Deed of Trust, Assignment of Rents and Security Agreement is attached hereto as Exhibit 7.

### Borrower's Payment Obligations under the Loan Documents

32. Section 3(a) of the Note requires Borrower to make payments on the first day of each month until Borrower has repaid the principal amount of the loan, accrued interest, and any other charges that Borrower may owe Lender under the Loan Documents.

33. Section 5(a) of the Note entitles Lender to collect a 5% Late Charge on late monthly payments.

34. Section 5(b) of the Note provides that "[i]f Lender has not received the full amount of any monthly payment for 30 days or more after the Payment Date or any other Event of Default has occurred and is continuing," the interest rate under the Note will increase by 4%.

### Borrower's Representations in the Loan Documents

35. Pursuant to Section 5.04 of the Loan Agreement, Borrower represented that "[t]here are no judicial, administrative, mediation or arbitration actions, suits or proceedings pending or, to the best of Borrower's knowledge, threatened in writing against or affecting Borrower, any Borrower Principal, or the Mortgaged Property which, if adversely determined, would have a Material Adverse Effect."

36. The Loan Agreement defines a "Material Adverse Effect" as "a significant detrimental effect on: (i) the Mortgaged Property, (ii) the business, prospects, profits, operations or condition (financial or otherwise) of Borrower, (iii) the enforceability, validity, perfection or priority of the Lien of any Loan Document, or (iv) the ability of Borrower to perform any obligations under any Loan Document." Loan Agreement at 52.

37. Pursuant to Section 5.07(a) of the Loan Agreement, Borrower represented that "[a]ll Improvements and the use of the Mortgaged Property comply with all applicable statutes, rules, and regulations…"

38. Pursuant to Section 5.07(b) of the Loan Agreement, Borrower represented that "[t]he improvements comply with, or will comply with upon completion of the Priority Repairs, applicable health, fire and building codes."

39. Pursuant to Section 5.09 of the Loan Agreement, Borrower represented that "Borrower and any operator of the Mortgaged Property, if applicable….are in possession of all material licenses, permits, and authorizations required for use of the Mortgaged Property, which are valid and in full force and effect as of the Effective Date."

**Borrower's Non-Payment Obligations under the Loan Documents**

40. Pursuant to Section 6.01 of the Loan Agreement, Borrower covenanted that it would comply with all governmental laws, ordinances, rules, regulations, and requirements that applied to the Property:

> Borrower will at all times comply with all laws, ordinances, rules, regulations, and requirements of any Governmental Authority having jurisdiction over the Mortgaged Property and with the terms of all licenses and permits and all recorded covenants and agreements relating to or affecting the Mortgaged Property, including all laws, ordinances, regulations, requirements, and covenants pertaining to health and safety, construction of improvements on the Mortgaged Property, Repairs, Capital Replacements, fair housing, disability accommodation, zoning and land use, applicable building codes, special use permits, environmental regulations, Leases, and the maintenance and disposition of tenant security deposits…Borrower will at all times maintain records sufficient to demonstrate compliance with the provisions of this Section 6.01.

41. Pursuant to Section 6.03(f) of the Loan Agreement, Borrower covenanted that, without prior consent, it would not

6

>   [a]dd to or change any location at which any of the Mortgaged Property is stored, held or located unless Borrower (A) gives Notice to Lender within 30 days after the occurrence of such addition or change, (B) executes and delivers to Lender any modifications of or supplements to this Loan Agreement that Lender may require, and (C) authorizes the filing of any financing statement or amendment which may be filed in connection with this Loan Agreement, as Lender may require.

42. Pursuant to Section 6.09(a) of the Loan Agreement, Borrower covenanted that it would not "commit waste or permit impairment or deterioration of the Mortgaged Property."

43. Pursuant to Section 6.09(d)(vi) of the Loan Agreement, Borrower covenanted that it would obtain Lender's prior written consent before "[r]emoving, demolishing, or altering the Mortgaged Property or any part of the Mortgaged Property, including any removal, demolition, or alteration occurring in connection with a rehabilitation of all or part of the Mortgaged Property."

44. Pursuant to Section 6.14(b) of the Loan Agreement, Borrower covenanted that all "Property Improvements" would be "completed in a good and workmanlike manner, with suitable materials, and in accordance with good building practices and all applicable laws, ordinances, rules, regulations, building setback lines and restrictions applicable to the Mortgaged Property."

45. The Loan Agreement defines "Property Improvements" as "[a]lterations intended to renovate or upgrade the Mortgaged Property." Loan Agreement § 6.09(e)(v).

**The Loan Documents' Definition of Events of Default**

46. Section 8.01(a) of the Loan Agreement provides that an "Event of Default" occurs when "Borrower fails to pay or deposit when due any amount required by the Note, this Loan Agreement or any other Loan Document."

47. Section 8.01(b) of the Loan Agreement provides that an Event of Default also occurs when

> Borrower or any of its officers, directors, trustees, general partners, or managers, or any Guarantor, commits fraud or makes a material misrepresentation or material omission in connection the application for or creation of the Indebtedness, any financial statement, Rent Schedule or other report or information provided to Lender during the term of the Indebtedness, or any request for Lender's consent to any proposed action, including a request for disbursement of funds under the Loan Agreement.

48. Section 8.01(c) of the Loan Agreement provides that an Event of Default also occurs if "Borrower has made any representation or warranty in this Loan Agreement that is false or misleading in any material respect."

49. Section 8.01(s) of the Loan Agreement provides that an Event of Default also occurs if:

> Borrower fails to perform any of its obligations under this Loan Agreement (other than those Events of Default specified in Sections 8.01(a) through (r) or included on any exhibit, schedule, or rider attached to this Loan Agreement) as and when required, and that failure continues for a period of 30 days after Notice of the failure by Lender to Borrower.
>
> However, if Borrower's failure to perform its obligations as described in this Section 8.01 (s) is of the nature that it cannot be cured within the 30-day cure period after Notice from Lender but reasonably could be cured within 90 days, then Borrower will have additional time as determined by Lender (not to exceed an additional 60 days) in which to cure the default, provided that Borrower has diligently commenced to cure the default during the initial 30-day cure period and diligently pursues the cure of the default.
>
> No Notice or cure periods will apply in the case of any failure which could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Loan Agreement, result in harm to Lender, danger to tenants or third parties, or impairment of the Note, the Security Instrument, this Loan Agreement, or any other security given under any other Loan Document.

50. Section 8 of the Deed of Trust provides that "[a]n Event of Default under the Loan Agreement will constitute an Event of Default under this Instrument."

**Lender's Remedies for Events of Default**

51. Section 8.03(a) of the Loan Agreement provides that "[u]pon an Event of Default, Lender may exercise any or all of its rights and remedies provided under the Loan Documents and Borrower will pay all associated costs, including Attorneys' Fees and Costs."

52. Section 5(e) of the Note entitles Lender to accelerate the Loan upon an Event of Default:

> If Borrower continues to be in default, the entire unpaid Principal Amount, any accrued interest, any Prepayment Charge, and all other amounts payable under this Note and any other Loan Document will immediately become due and payable, at the option of Lender, without any prior Notice to Borrower (unless applicable law requires Notice).

53. Section 3(c)(i)-(ii) of the Deed of Trust entitles Lender to apply for the appointment of a receiver upon an Event of Default:

> (c) If an Event of Default has occurred and is continuing, then Lender will have each of the following rights and may take any of the following actions:
>
> (i) Lender may, regardless of the adequacy of Lender's security or the solvency of Borrower and even in the absence of waste, enter upon and take and maintain full control of the Mortgaged Property in order to perform all acts that Lender in its discretion determines to be necessary or desirable for the operation and maintenance of the Mortgaged Property, including the execution, cancellation or modification of Leases, the collection of all Rents, the making of Repairs to the Mortgaged Property and the execution or termination of contracts providing for the management, operation or maintenance of the Mortgaged Property, for the purposes of enforcing the assignment of Rents pursuant to Section 3(a), protecting the Mortgaged Property or the security of this Instrument, or for such other purposes as Lender in its discretion may deem necessary or desirable.
>
> (ii) Alternatively, if an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any

9

> court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law.

54. Section 3(c)(iv)-(vi) of the Deed of Trust governs the receiver's powers and compensation:

> (iv) Lender or the receiver, as the case may be, will be entitled to receive a reasonable fee for managing the Mortgaged Property.
>
> (v) Immediately upon appointment of a receiver or immediately upon Lender's entering upon and taking possession and control of the Mortgaged Property, Borrower will surrender possession of the Mortgaged Property to Lender or the receiver, as the case may be, and will deliver to Lender or the receiver, as the case may be, all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.
>
> (vi) If Lender takes possession and control of the Mortgaged Property, then Lender may exclude Borrower and its representatives from the Mortgaged Property.

55. Upon an Event of Default, Section 8.02(a)-(b) of the Loan Agreement, Section 9 of the Note, and Section 7 of the Deed of Trust entitle Lender to (a) take such actions as it reasonably deems necessary to perform Borrower's obligations and protect Lender's interest, including but not limited to payment of attorneys' fees and costs and payment of fees and out-of-pocket expenses of accountants, inspectors and consultants; (b) charge Borrower all costs and expenses incurred by Lender in taking such actions; and (c) add any such costs and expenses to the indebtedness secured by the Deed of Trust.

56. Section 31(a) of the Deed of Trust entitles Lender to non-judicially foreclose against the Property upon an Event of Default:

10

> At any time during the existence of an Event of Default, Lender, at Lender's option, may declare the Indebtedness to be immediately due and payable without further demand, and may invoke the power of sale and any other remedies permitted by applicable law or provided in this Instrument or in any other Loan Document. Borrower acknowledges that the power of sale granted in this Instrument may be exercised by Lender without prior judicial hearing. Lender will be entitled to collect all costs and expenses incurred in pursuing such remedies, including Attorneys' Fees and Costs and costs of documentary evidence, abstracts and title reports.

57. Section 10.04 of the Loan Agreement, Section 17 of the Note, and Section 15 of the Deed of Trust provide that the Loan Documents will bind the respective successors and assigns of Borrower and Lender, and that the rights granted by the Loan Documents will inure to Lender's successors and assigns.

**Personal Liability of Borrower and Guarantor for Certain Events of Default**

58. Section 3.01 of the Loan Agreement provides that Borrower generally will have no personal liability under the Loan Documents for the repayment of the Loan or for the performance of any obligations under the Loan Documents, and that Lender's sole recourse generally will be the exercise of its rights and remedies with respect to the Property and any other collateral held as security for the Loan.

59. However, Section 3.05(c) of the Loan Agreement provides that Borrower will become personally liable to Lender for the repayment of all of the indebtedness under the Loan if "[t]here was fraud or intentional written material misrepresentation by Borrower, any Affiliate, or any employee of Borrower in connection with the application for or creation of the Indebtedness or there is fraud in connection with any request by Borrower or Guarantor for any action or consent by Lender.

60. Section 3.03(a) of the Loan Agreement further provides that Borrower is personally liable for any loss resulting from Borrower's "unintentional written material misrepresentation in

11

connection with the application for or creation of the Indebtedness or any action or consent of the Lender; provided that the assumption will be that any written material misrepresentation was intentional and the burden of proof will be on Borrower to prove there was no intent."

61. Section 3.03(c) of the Loan Agreement further provides that Borrower is personally liable for any resulting loss if "Borrower undertakes and fails to complete any Capital Improvement, Property Improvement, or other alteration of the Mortgaged Property."

62. Section 3.03(d) of the Loan Agreement further provides that Borrower is personally liable for any resulting loss if it "engages in any willful act of material waste of the Mortgaged Property."

63. Section 3(a)(i) of the Guaranty provides that Guarantor absolutely, unconditionally, and irrevocably guarantees to Lender "[t]he full and prompt payment when due, whether at the Maturity Date or earlier, by reason of acceleration or otherwise, of all amounts for which Borrower is personally liable under Article III of the Loan Agreement."

**Borrower's Defaults under the Loan Documents**

64. Borrower failed to make the monthly payments due under the Note on February 1, 2021 and March 1, 2021.

65. In addition, Lender recently discovered that Borrower had unlawfully constructed two additional floors on each of the two apartment buildings located on the Property.

66. Upon information and belief, Borrower forged the certificates of occupancy associated with the illegal construction.

67. Borrower's unlawful construction of the additional floors has triggered an investigation by the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA").

68. Among other things, DCRA issued "stop work orders" and "notices of infraction" to Borrower as a result of the unlawful construction.

69. To protect the collateral for its Loan, Lender contacted DCRA in an attempt to facilitate the investigation and to resolve the issues associated with Borrower's unlawful construction.

70. However, DCRA will not discuss these issues with Lender because it is not the owner of the Property.

71. Lender notified Borrower and Guarantor of the foregoing Events of Default, informed them that Lender had accelerated the Loan, and demanded that they pay the full indebtedness owed under the Loan.

72. Despite notice and demand, these amounts remain unpaid.

73. As of March 15, 2021, the amount required to satisfy the Loan is $5,682,699.62, exclusive of attorney's fees and costs, and with interest, fees, and expenses continuing to accrue.

74. The Property, Rents, Leases, and additional collateral securing the Loan, together with the books, records, and other property relating to the ownership and operation of the Property (collectively, the "Borrower Assets") are the sole assets of Borrower.

75. By constructing two additional floors on each of the two apartment buildings without obtaining approval from the appropriate governmental authorities, Borrower has subjected itself and the Property to legal and regulatory action by DCRA and has potentially endangered the health and safety of the Property's residents.

76. Therefore, there is manifest danger of loss, deterioration, and diminution of the Property, which is the primary security for the Loan and a material source of repayment, and Lender is threatened with material losses and injuries for which it has no adequate remedy at law.

77. Lender is contractually and equitably entitled to the immediate appointment of a receiver to take possession of and hold, subject to the discretion of this Court, the Property, Leases, Rents, and other Borrower Assets.

78. The appointment of a receiver is necessary for Lender to assess the condition of the Property, to communicate with DCRA to resolve the legal and regulatory issues associated with the unlawful construction, and to protect and preserve the Property until such time as a foreclosure can be completed or the Property is otherwise liquidated to satisfy the outstanding debt.

## FIRST CLAIM FOR RELIEF

### Breach of Contract – against Borrower

79. The foregoing paragraphs of this Complaint are incorporated herein by reference as if fully set forth herein.

80. The Loan Agreement, Note, and Deed of Trust are valid and binding contracts between Lender and Borrower, setting forth the terms and conditions on which Lender provided financing to Borrower.

81. Borrower has breached its obligations under these documents by, among other things, failing to repay the indebtedness in accordance with the terms thereof and unlawfully constructing two additional floors on each of the two apartment buildings located on the Property.

82. Lender has validly accelerated the full balance of the Loan as result of Borrower's defaults.

83. Further, Borrower's forgery of certificates of occupancy for the illegally constructed floors constitutes a full recourse event under Section 3.05(c) of the Loan Agreement.

84. Accordingly, Borrower is liable to Lender for the full amount of indebtedness owed under the Loan Agreement, Note, and Deed of Trust.

85. In the alternative, Borrower's various defaults constitute partial recourse events under Section 3.03(a), (c), and (d) of the Loan Agreement.

86. Accordingly, and in the alternative, Borrower is liable to Lender for all losses resulting from the events described in Section 3.03(a), (c), and (d) of the Loan Agreement.

87. Borrower has failed to pay the amounts owed despite Lender's demand.

88. As a result, Lender is entitled to an award of damages against Borrower.

89. To pursue its rights, Lender has retained counsel and incurred attorney's fees for which Borrower is liable under the Loan Agreement, Note, and Deed of Trust.

## SECOND CLAIM FOR RELIEF

### Breach of Contract – against Guarantor

90. The foregoing paragraphs of this Complaint are incorporated herein by reference as if fully set forth herein.

91. The Guaranty is a valid and binding contract between Lender and Guarantor.

92. As a result of Borrower's defaults, Lender has validly accelerated the full balance of the Loan.

93. Pursuant to Section 3.05(c) of the Loan Agreement and Section 3(a)(i) of the Guaranty, Guarantor is jointly and severally liable to Lender for the full amount of indebtedness owed by Borrower under the Loan Agreement, Note, and Deed of Trust.

94. In the alternative, and pursuant to Section 3.03(a), (c), and (d) of the Loan Agreement and Section 3(a)(i) of the Guaranty, Guarantor is jointly and severally liable to Lender for all losses resulting from the events described in Section 3.03(a), (c), and (d) of the Loan Agreement.

95. Guarantor has failed to pay the amounts owed despite Lender's demand.

96. As a result, Lender is entitled to a joint and several award of damages against Guarantor.

97. To pursue its rights, Lender has retained counsel and incurred attorney's fees for which Guarantor is jointly liable under the Guaranty.

### THIRD CLAIM FOR RELIEF

#### Appointment of a Receiver – against Borrower

98. The foregoing paragraphs of this Complaint are incorporated herein by reference as if fully set forth herein.

99. The Borrower Assets are solely the assets of Borrower.

100. The Property, Leases, and Rents are Lender's primary security for the Loan.

101. Borrower has failed to make monthly payments under the Loan and has unlawfully constructed two additional floors on each of the two apartment buildings located on the Property.

102. Lender, as an interested and secured party, is threatened with material losses and injuries, including the dissipation and/or diminution in value of the Property as a result of Borrower's unlawful construction and the resulting legal and regulatory actions of DCRA, should Borrower remain in control of the Property.

103. Borrower consented to the appointment of a receiver in the Deed of Trust.

104. In accordance with Rule 66 of the Federal Rules of Civil Procedure, Lender, as a secured creditor, asks the Court to appoint a receiver to take immediate possession of and hold the Borrower Assets, subject to the discretion of this Court.

### PRAYER FOR RELIEF

WHEREFORE, Lender respectfully requests:

A. That the Court grant Lender the relief it seeks on all counts;

B. That the Court enter a joint and several award of damages against Borrower and Guarantor;

C. That the Court appoint a receiver to take possession of, control, and hold the Borrower Assets, including the Property, Leases and Rents;

D. That Borrower and its agents charged with operating and/or managing the Property promptly render an accounting for all Rents and other income from the Property, and all other revenue from the Borrower Assets, received by Borrower in the preceding twelve (12) months, and provide all such information and reports concerning the ownership, use, operation, management, repair, maintenance, and occupation of the Property and the other Borrower Assets as may be required by this Court in order to provide the receiver appointed by this Court with the information necessary to perform its obligations as a receiver of the Property and the other Borrower Assets;

E. That the receiver appointed by this Court shall segregate, preserve, protect, collect and account for, and manage, operate, maintain, and preserve, the Borrower Assets, including the Property;

F. That Borrower promptly pay over to the receiver, and cause its agents, affiliates and any management company which presently or previously managed the Property to pay over to the receiver, (1) all deposits by any tenants of the Property, and all Rents, revenues, and other income from the Property, and all other funds which are a part of the Borrower Assets, and which are currently in their possession or control; and (2) all such deposits, Rents, revenue, and other income from the Property and other such funds which are received by any of them from and after the appointment of a receiver;

17

G. That the receiver pay to Lender, from time to time and to the extent available, any income and revenue from the Property in excess of that amount reasonably required to manage, operate, lease, maintain, and preserve the Property and other Borrower Assets;

H. That Lender be permitted, at its sole election, and be authorized to make such advances to the receiver for the benefit and account of Borrower under the Loan Documents as may be necessary from time to time, in the exercise of Lender's sole discretion, and as provided under the Loan Documents, to pay costs and expenses reasonably required to manage, operate, lease, maintain, and preserve the Property to the extent that the Rents, income, and other revenue from the Borrower Assets are insufficient to pay such costs and expenses, all without Lender becoming a mortgagee in possession or incurring any other liability to Borrower;

I. That any such advances made by Lender pursuant to the foregoing paragraph of this prayer be additional indebtedness which is owed to the Lender under the Note and secured by the Deed of Trust and other Loan Documents;

J. That the Lender be permitted to commence and consummate, without further other of this Court and to the extent not otherwise prohibited by law, such judicial or non-judicial foreclosure proceedings against the Property and any other collateral under and pursuant to the terms of the applicable Loan Documents, and that the receiver be discharged immediately if and when the sale of all of the collateral is consummated;

K. That the receiver be authorized, upon request by Lender, to list or otherwise advertise for sale and to solicit offers to purchase the Property and other collateral, on such terms as are acceptable and approved in writing prior to such sale by the Lender, by way of public or private sale or other disposition in accordance with the applicable provisions of 28 U.S.C. §§ 2001

and 2004, free and clear of all security interests, liens, claims and other interests with all valid security interests and liens to attach to the proceeds of such sale(s);

L.     That this Court authorize the receiver to communicate with DCRA and all other governmental entities on behalf of Borrower and in the same manner as Borrower;

M.     That this Court award Lender its attorney fees and costs for this action; and

N.     That this Court award such other and further relief as is just and proper.

Dated:  March 24, 2021

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *John D. Sadler*
John D. Sadler (#483301)
Matthew D. Lamb (#1034529)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
sadlerj@ballardspahr.com
lambm@ballardspahr.com

*Counsel for Plaintiff*